United States District Court
Southern District of Texas
Laredo Division

| | | |
|---|---|---|
| Master Sergeant Jesus Marchan, | § | |
| plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 5:20-CV-91 |
| | § | |
| G4S Secure Solutions, Inc., Karen Johnson, | § | |
| Norma Cortez Lopez, Alfredo De Los Santos, | § | |
| and Danois Montoya, | § | |
| defendants. | § | |

# Plaintiffs' 1ˢᵗ Amended Complaint (Petition)

Now Comes Master Sergeant Jesus Marchan and files this his first amended complaint (petition) complaining of G4S Secure Solutions, Inc., Karen Johnson, Norma Cortez Lopez, Alfredo De Los Santos, and Danois Montoya, and would respectfully show the Court:

Amendment by

1.      Plaintiff files this first amended complaint (petition) as a matter of course within 21 days of the filing of defendants' answer and 12(b)(6) motion. Fed. R. Civ. P. 15(a)(1)(B).

Discovery Control Plan

2.      Plaintiff requests discovery be conducted under Level 2 according to Texas Rule of Civil Procedure 190.3.

Relief

3. Plaintiff seeks monetary relief over $1,000,000.00. TEX. R. CIV. P. 47(c)(5).

Parties

4. Plaintiff Jesus Marchan is a natural person, Texas citizen, and was a resident of Webb County, Texas during the accrual of the claims made the basis of this suit.

5. Defendant G4S Secure Solutions, Inc. does business in Texas and has appeared in this suit.

6. Norma Cortez Lopez is a natural person doing business in Texas and has appeared in this suit.

7. Karen Johnson is a natural person doing business in Texas and has appeared in this suit.

8. Alfredo De Los Santos is a natural person doing business in Texas and has appeared in this suit.

9. Danois "Danny" Montoya is a natural person doing business in Texas and has appeared in this suit.

Venue

10. Venue of this suit in Webb County is proper because all or a substantial part of the acts and events giving rise to these claims occurred here. TEX. CIV. PRAC. & REM. CODE ANN. § 15.002 (West, Westlaw through 2019 Reg. Sess.).

Jurisdiction

11.     This Court has subject matter jurisdiction over the lawsuit as the amount in controversy exceeds this Court's minimum jurisdictional requirements. TEX. CONST. ART. 5, § 8; TEX. GOV'T CODE ANN. §§ 24.007, 24.008 (West, Westlaw through 2019 Reg. Sess.).

Statement of Facts

A Wounded Warrior Meets the World's Largest

12.     Jesus Marchan is a retired combat veteran of the United States Army, honorably discharged after serving more than 21–years and achieving the rank of Master Sergeant (E8). Master Sergeant Marchan served in harm's way in Bosnia from 2001–2002 and Afghanistan from 2005–2006. Like many veterans, in exchange for his service he received a 100% disability rating.

13.     G4S Secure Solutions, Inc. is the world's largest security company when measured by its revenues, has operations in more that ninety countries, and is the world's third–largest private employer with 570,000 employees. G4S has written anti-harassment and discrimination policies that are designed to protect its employees. G4S claims that over 26% of its employees are military veterans, and that it has earned awards for its treatment of its employee veterans.

14.     In 2014, Master Sergeant Marchan was cleared by a psychiatrist and qualified for a job with G4S. He passed a medical exam and possessed the required commercial driver's license. Master Sergeant Marchan's 100% disability rating did not impair his ability to reasonably perform his job duties. He started as a manager, then during his five–year tenure he was promoted to Captain and Sector Manager.

15. Not surprisingly, the character and training that brought survival and success to Master Sergeant Marchan while in the Military also served him well in the private sector. While at G4S, he created a nationwide tracking report system, computerized the local Laredo office, and developed a phone forwarding system. Because of his performance and leadership, he was the number two employee for promotion to Operations Manager.

16. Despite Master Sergeant's team–oriented, objective–first management style, his individual achievement and excellence nonetheless engendered jealousy amongst some of his superiors that did not possess his disciplined drive and commitment. Unfortunately, Master Sergeant Marchan would again encounter enemies determined to undermine his efforts and hard work.

G4S Exposes Master Sergeant Marchan's Inner Battle Scars

17. Defendants Karen Johnson and Norma Cortez Lopez were Master Sergeant Marchan's G4S supervisors who were determined to sabotage his much–deserved professional advancement. And to do so they were willing to use his Service–inflicted disabilities against him. Their hostile designs were displayed in several incidents.

18. While defendant Cortez Lopez was admonishing Sergeant Master Marchan for a minor miscommunication that had already been resolved, he asked if he had violated a stated policy. When defendant Cortez Lopez could not identify an applicably policy, she told him in response "We just don't do that," to which he replied "'We don't do that' is not a policy." Defendant Cortez Lopez then screamed "This isn't the Army," to which Master Sergeant Marchan said "The Army is the most efficient organization that I have witnessed to date."

19. Defendant Cortez Lopez, while serving as a G4S Operations Manager, in front of other G4S employees asked Master Sergeant Marchan "How are you doing with your

medications?" Surprised and guarded, Master Sergeant Marchan replied "What medication?" Defendant Cortez Lopez then said "are you off your meds" because she thought he was falling asleep, but Master Sergeant Marchan clarified that he was meditating, which he was previously taught and advised to do by his psychiatrist. Defendant Cortez Lopez nonetheless reported to the G4S corporate office that Master Sergeant Marchan fell asleep in her presence. She then referred Master Sergeant Marchan for a "fit for duty" evaluation and told his evaluator that he carried a weapon.

20.     Defendant Alfredo De Los Santos, a G4S driver, had openly said "Don't trust combat veterans, they're not all there." Co–worker Octavio Galindo told Defendant De Los Santos to watch what he says because it could affect every veteran working for G4S. According to co-worker Jesus Rossel, defendant De Los Santos later admitted telling defendants Cortez Lopez and Karen Johnson "you can't trust those guys," referring to G4S employees that were disabled combat veterans.

21.     Master Sergeant Marchan filed his charge of discrimination against G4S. He was flagged as being at a high rate for suicide by the Veterans Administration and started seeing a new psychologist.

G4S Exploits Master Sergeant Marchan's Disability

22.     In retaliation for Master Sergeant Marchan's Equal Employment Opportunity Complaint, G4S began targeting any employees viewed as troublemakers. Supervisors began micromanaging employees and copying their supervisors on emails.

23.     A driver on Master Sergeant Marchan's team accidently struck and killed a pedestrian. Master Sergeant Marchan was "on call" at the time, but he takes prescribed medication to sleep and uses a CPAP (continuous positive airway pressure) machine and

thus did not respond to telephone calls advising him of the accident. Defendant Danny Montoya, a G4S Program Director and Master Sergeant Marchan's immediate supervisor, knew of the CPAP machine and sleep medication. The G4S employee on duty appropriately responded to the pedestrian fatality, but defendant Montoya nonetheless placed Master Sergeant Marchan on leave. Master Sergeant Marchan possesses a commercial driver's license and drives for G4S, so he is expected to be well rested to protect his occupants and the public as mandated by applicable federal regulations.

24. Defendant Karen Johnson then succeeded defendant Cortez Lopez as Operations Manager. Defendant Johnson proceeded to manufacture three separate union grievances against Master Sergeant Marchan. First, Master Sergeant Marchan had designed a shift schedule that allowed bidding for shifts according to employee seniority. All the affected employees liked Master Sergeant Marchan's system. Defendant Johnson incorrectly claimed this shift schedule violated the applicable collective bargaining agreement. The changing of this shift schedule damaged employee morale. Master Sergeant Marchan filed his second charge of discrimination with the EEOC because he was being retaliated against for the filing of his first charge of discrimination.

25. Second, Karen Johnson began manipulating computer data on mission start times to make Marchan's Laredo sector appear tardy and causing operational expenses. Defendant Johnson did not similarly manipulate data for other sectors. Third, defendant Johnson overrode Master Sergeant Marchan's managerial discretion and began disciplining his employees for minor infractions causing workplace dissatisfaction when his prior coaching and counseling had an established history of being more productive.

G4S Ends Master Sergeant Marchan's Promising Career

26. G4S's prolonged campaign against Master Sergeant Marchan consisted of:

- denigrating him for his past military service;

- publicizing his medical condition and disability and using it against him;

- defaming his mental stability and reliability;

- disciplining him for his known medical condition and placing him on leave for an incident that was handled appropriately; and

- eroding his managerial discretion and manipulating information to impugn his job performance.

Not surprisingly, Master Sergeant Marchan withstood this campaign of harassment and would not quit his job—if bombs and bullets did not stop him in Bosnia and Afghanistan, then neither would workplace discrimination in Texas. G4S was ultimately forced to terminate Master Sergeant Marchan's employment on April 29, 2019. He filed a third charge of discrimination with the EEOC and his right to sue letter was issued on February 27, 2020.

27.     G4S has a history of terminating other disabled combat veterans, including those that were going to corroborate Master Sergeant Marchan's complaints. G4S Secure Solutions, Inc.'s carefully–crafted public image of being a pro–military employer is a facade that will crumble due to its repeated acts of hypocrisy towards Master Sergeant Marchan and other similarly situated disabled combat veterans.

28.     Master Sergeant Marchan was earning $35.70/hour at the time he was unlawfully terminated by G4S.

Unlawful Employment Disability Discrimination

29.     Defendants intentionally committed unlawful employment practices by discriminating, adversely affecting, retaliating, and discharging Master Sergeant Marchan as a result of his 100% total disability inflicted as a result of his armed military service in Bosnia and Afghanistan in defense of this country. Master Sergeant Marchan's mediation practices and off–duty use of sleep medication and a CPAP machine are mental and physical limitations that were known to G4S and could have been reasonably accommodated without undue hardship. Master Sergeant Marchan's disability was the motivating factor in defendants' unlawful employment practices against him.

30.     Master Sergeant Marchan is asserting claims under Texas law only and is not seeking recovery under federal law.

Negligence

31.     Defendant G4S Secure Solutions, Inc. negligently hired, retained, and supervised co–defendants Cortez Lopez, Johnson, De Los Santos, and Montoya which was the proximate cause of the damages suffered by Master Sergeant Marchan. This negligence includes, but is not limited to, allowing employees to: (1) insult prior military combat service; (2) disclose without authorization privileged medical information for purposes of harassment; (3) challenge without cause mental stability; (4) discipline without cause a disability; and (5) falsifying information to discredit job performance.

Invasion of Privacy

32.     Defendants intentionally intruded on Master Sergeant Marchan's solitude, seclusion, or private affairs, which would be highly offensive to reasonable persons, and thereby caused injury.

Defamation

33.    Defendants maliciously or negligently made and published defamatory, false statements of fact regarding Master Sergeant Marchan causing him injury.

Intentional Infliction of Emotional Distress

34.    Defendants acted intentionally or recklessly in committing conduct that was extreme and outrageous, proximately causing Master Sergeant Marchan severe emotional distress

Malice/Gross Negligence

35.    Defendants acted with malice or reckless indifference against the state–protected rights of Master Sergeant Marchan. Defendants committed malice and gross negligence that proximately caused the workplace discrimination, retaliation against, and discharge of Master Sergeant Marchan. Publicly releasing privileged medical information in order to question the mental stability of a disabled combat veteran—without cause—for purposes of humiliating him and forcing his resignation constituted malice and gross negligence. Disciplining a combat veteran for his disability and falsifying data to reprimand him in order to force him to quit his job constitutes malice and gross negligence. Viewed objectively from the standpoint of defendants, their acts and omissions departed from the ordinary standard of care to such an extent that they created an extreme degree of risk of harming others, and they had actual subjective awareness of the risk involved and choose to proceed in conscious indifference to the rights safety, or welfare of others. The conduct of defendants posed a likelihood of serious injury to Master Sergeant Marchan.

Damages

36. Master Sergeant Marchan has suffered past and future economic and non–economic damages, including, lost wages, back and front pay, benefits, pain and suffering, mental anguish, emotional distress, humiliation, embarrassment, and loss of fringe benefits. Master Sergeant Marchan is further entitled to punitive damages and pre and post–judgment interest and costs of court.

Attorneys' & Expert Fees

37. Master Sergeant Marchan is entitled to a recover of attorneys' fees and expert witness fees.

Conditions Precedent

38. All conditions precedent incident to filing this suit have been performed or have occurred.

Jury Demand

39. Master Sergeant Marchan demands a jury trial and tenders herewith the associated fee. Tex. R. Civ. P. 216.

Prayer

40. Wherefore, Premises Considered, Master Sergeant Marchan respectfully requests the Court sets this matter for jury trial, and upon receipt of a verdict, enter a judgment that Master Sergeant Marchan recover all pecuniary and non–pecuniary monetary damages, together with attorneys' fees, punitive damages, costs of court, pre and post–judgment

interest, and that plaintiff be granted any further relief, both general and special, at law or in equity, to which he may be justly entitled to receive.

Respectfully submitted,

By:    /s/ *Baldemar Garcia Jr.*
       Baldemar Garcia Jr.
       Texas Bar No. 00790740
       bgarcia@pmbglaw.com
       Person Mohrer Morales Boddy Garcia Gutierrez (PMBG), PLLC
       602 East Calton Road, Suite 202
       Laredo, Texas 78041
       voice 956.727.4411
       facsimile 956.727.7765

By:    _____
       George Altgelt
       State Bar Number 24045401
       219 E. Del Mar, Ste. 2
       Laredo, Texas 78041
       Phone (956) 725-4400
       Fax (956) 725-4401

attorneys for plaintiff Jesus Marchan

Certificate of service

Plaintiff's first amended complaint (petition) was served on all counsel of record by e-mail notification from the DCECF on July 2, 2020. Fed. R. Civ. P. 5.

Kelly Eisenlohr-Moul
Dinsmore & Shohl LLP
1100 Peachtree Street, Suite 950
Atlanta, Georgia 30309
Kelly.eisenlohr-moul@dinsmore.com



*/s/Baldemar Garcia Jr.*
Baldemar Garcia Jr.